**Chester A. OEHLER, Administrator, Estate of Benjamin A. Stephens, Sr., Appellant,**

v.

**DALLAS RAILWAY & TERMINAL COMPANY, Appellee.**

No. 5171.

Court of Civil Appeals of Texas.

El Paso.

April 18, 1956.

Rehearing Denied May 9, 1956.

Fritz & Bridges, Dallas, for appellant.

Robert E. Burns, Burford, Ryburn, Hincks & Ford, Dallas, for appellee.

FRASER, Justice.

This is an appeal from the District Court of Dallas County, 14th Judicial District of Texas, wherein plaintiff, (appellant) sued the defendant for damages resulting from the death of Benjamin A. Stephens, Sr., who was struck by a street car as he was crossing the street. Deceased had been a passenger on said street car. The jury, in answer to special issues, found defendant's operator or motorman guilty of negligence in failing to keep a proper lookout, and exonerated him from failing to sound his bell and running a red light. The jury found deceased guilty of contributory negligence in failing to keep a proper lookout as he crossed the street, and judgment was rendered that plaintiff take nothing.

Plaintiff bases his appeal on the refusal of the trial court to require defendant to disclose the names of possible witnesses and in excusing witness Tate (Executive Vice-President of defendant Company) from writ of duces tecum. It seems that at the time of the incident, deceased, a pedestrian, was allegedly struck by the defendant's street car, was helped to his feet and walked to the curb, from which he was removed by ambulance to a hospital. He was found to have a broken hip, and after an apparently successful operation, developed pneumonia and died in the hospital. His doctor testified that the broken hip and his consequent confinement to bed were the cause of the pneumonia. Deceased was eighty years old at the time of the accident. At the time of the incident the motorman passed out certain slips to some of the passengers, and apparently five of them returned same to him with their names and addresses thereon. These came into the hands of an investigator for defendant, and in turn were delivered by him to defendant's attorney. There is no allegation that the slips contained any information other than names and addresses. When plaintiff made his demand for the slips or contents thereof defendant objected on the ground that the names thereon did not pertain to any material issue in the lawsuit; that such information was privileged information transmitted from client to attorney; and that such information was obtained by defendant subsequent to the accident and during the investigation following, and would therefore be unavailable to the other party.

We have not been cited any Texas statute or rule requiring a party to a lawsuit to disclose the names of his witnesses to his adversary, nor have we been cited to any Texas cases to that effect. Decisions in other parts of the country and in

some Federal courts indicate that in the absence of any provision requiring disclosure of witnesses no such disclosure should be or would be required. We think such rule is sound. A party to a lawsuit is required in his pleadings to disclose and set up his theory of his particular side of the lawsuit, and such pleadings thereafter control the evidence to be admitted, but we do not see how or why either party should be required to disclose the names of his witnesses or other details of the preparation of his case. His adversary may, under the present rule, require him to answer interrogatories about what he knows about the lawsuit, but we know of no Texas authority that will or should compel him to disclose who his witnesses are or may be.

■ Following are cases and authorities that restrict the plaintiff's right of discovery to those facts within the knowledge of the defendant, or documents in his possession that are material to the case at trial. We think this is a sound rule, and bills of discovery, writs of duces tecum and other comparable actions should not extend to the adversary's evidence except that which is material, relevant, admissible and within the knowledge of the party himself or some document within his control. 27 C.J.S., Discovery, § 33, p. 51; 27 C.J.S., Discovery, § 30, p. 47; Maywood v. Texas Company, D.C., 17 F.2d 490; Kinney v. Rice, D.C., 238 F. 444; Krupp v. Chicago Transit Authority, 4 Ill.App.2d 222, 124 N.E.2d 13; Pattyn v. Wright Aeronautical Corp., 137 N.J.Eq. 142, 43 A.2d 855; State ex rel. Evans v. Broaddus, 245 Mo. 123, 149 S.W. 473; Ex parte Nolen, 223 Ala. 213, 135 So. 337; Gudger v. Robinson Bros. Contractors, 219 N.C. 251, 13 S.E.2d 414; Wise v. Western Union Tel. Co., 6 W.W.Harr., Del., 456, 178 A. 640.

■ There are cases holding that information or documents placed in the hands of an attorney come under the head of privileged communications. Missouri, K. & T. Ry. Co. of Texas v. Williams, 43 Tex.Civ. App. 549, 96 S.W. 1087; Ex parte Shoup, 154 Ohio St. 221, 92 N.E.2d 625; McCormick & Ray, Sec. 226, p. 316.

However, the mere handing of a document otherwise admissible to an attorney does not thereby render the same privileged. The attorney can be compelled to produce any paper of his client in his possession which the client could be compelled to produce. Wigmore, Sec. 2307; McCormick & Ray, Sec. 226, p. 316; McCormick on Evidence, Chap. 10, Sec. 100; Edison Electric Light Co. v. U. S. Electric Lighting Co., C.C., 45 F. 55.

■ Under the present state of the record, the names on the slips at best represented, as suggested, possible onlookers and possible witnesses, and ought to have been available to either or both sides. They had not in any way been identified or designated as witnesses for appellee, and as we have said above, we do not think that the mere handing of the file containing these slips to the attorney for appellee thereby rendered them privileged. We therefore believe that this information should have been available to appellant. The motorman testified that he handed out these slips to the passengers who were on the car at the time of the accident, and that they in turn handed them in to him as they left the car. The record is absent any evidence as to what, if anything, any of these people saw, and so far as we know they may have been witnesses for either side. Without speculating, it must be acknowledged in that respect that the attorney for appellee felt that he had some good reason for not divulging these names to appellant or his attorney. It is possible, therefore, that someone thought that instead of being witnesses for the appellee they might well have been witnesses for appellant. These slips were passed out apparently at or within a very few moments of the accident, and the circumstances indicate that these people could have easily been onlookers or spectators at the time of the accident, and their testimony should have been made available to the court. We therefore do not believe that the circumstances of this

particular case bring it under the rules enunciated above.

It has been urged that appellant has failed to show harm in that he has not demonstrated probable harm to his case by offering any evidence that these names were living, available people who had evidence to offer. That may be true, but the law has never required a party to do an impossible thing, nor has a party ever been held responsible or derelict for not doing that which he could not have done. It has been suggested that because he did not apply for the writ of duces tecum until the day of the trial it was then too late to have done anything about it. That may be true, but it may not be true. It is entirely within the realm of possibility that appellant could have located one or more of these potential witnesses, and might have used them and made them available as witnesses for the second day of the trial, had he been in possession of their names and addresses, if he had served this writ thirty or sixty days before the trial, on the basis of the record before us we must assume that the court would have ruled the same then as he did on the day of the trial. That being true, it is not true our appellant could have ever shown harm or possible harm any more than he has done. He was entitled to have had an opportunity to find out the names on these slips and ascertain if these people were available and had information that might be useful to the court. This valuable right was denied him, and we do not see how it would have been any easier for him to show harm had he presented it earlier than he did, assuming as we must that appellee or any of his agents or attorneys would have refused to divulge the information, and that if called upon at that time the court would have ruled then as it did later. This assumption is based on the reading of the record and the discussion therein between the attorneys and the court.

We therefore hold that the court was in error in excusing the witness Tate from the writ of duces tecum, and in refusing to require appellee to reveal the contents of the slips of paper to appellant.

Appellant's point is therefore sustained and the case is reversed and remanded for a new trial.